IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ANTHONY ROBERTSON,<br><br>                Plaintiff,<br><br>  vs.<br><br>DIANE SABATKA-RINE, Interim Director of the Nebraska Department of Correctional Services, in her official capacity[1]; SCOTT FRAKES, Director of the Department of Corrections, in his individual capacity; HARBANS DEOL, Medical Director for Nebraska Department of Corrections, in his individual and official capacity; and KERI PEDRICK, Former Corrections Corporal for the Nebraska Department of Corrections and Acting OCC Property Officer at Omaha Correctional Institute, in her individual capacity;<br><br>                Defendants. | 8:22-CV-208<br><br>MEMORANDUM AND ORDER |

      This matter is before the Court on the defendants' motion to dismiss (filing 14) the operative complaint (filing 13) under Federal Rule of Civil Procedure 12(b)(6) as to Diane Sabatka-Rine, Scott Frakes, and Harbans Deol. For the reasons set forth below, the Court will grant the defendants' motion.

---

[1] Diane Sabatka-Rine, Interim Director of the Nebraska Department of Correctional Services, is substituted for Scott Frakes (in his official capacity) as a defendant in this action, pursuant to Fed. R. Civ. P. 25(d)(1).

## I. STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. While the Court must accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the non-moving party, *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012), a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. *Iqbal*, 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id*. at 679.

## II. BACKGROUND

The plaintiff is an inmate at the Omaha Correctional Center and, pursuant to 42 U.S.C. § 1983, he seeks relief for alleged violations of his Eighth and Fourteenth Amendment rights which occurred while he was incarcerated. Filing 13 at 1-2. The motion to dismiss (filing 14) relates only the plaintiff's Eighth Amendment claims, and so this order will be limited to that issue.

The plaintiff alleges that he has been on chronic oxygen support since 2015, after he sustained a severe lung injury while in custody at the Tecumseh State Correctional Institution. Filing 13 at 3. The plaintiff alleges his lung condition (chronic obstructive pulmonary disease, or COPD) made him a "high-risk individual for contracting" the COVID-19 virus. Filing 13 at 4. The plaintiff further asserts that Scott Frakes, former Director of the Nebraska

2

Department of Correctional Services, knew of the plaintiff's condition because, first, Frakes was named as a defendant in a different lawsuit the plaintiff brought regarding that incident, and second, the plaintiff filed a grievance with Frakes about his heightened risk of contracting the COVID-19 virus. Filing 13 at 3-4.

The plaintiff inconsistently alleges that Frakes and the department promulgated quarantine procedures which were not followed, failed to account for the plaintiff's lung condition in fashioning quarantine procedures, and/or failed altogether to create quarantine procedures. *See* filing 13 at 4-5. In any event, the plaintiff asserts that the Omaha Correctional Center's staff failed to follow some unspecified procedure for quarantining newly transferred inmates, which caused the plaintiff to be exposed to and diagnosed with COVID-19 on or around December 3, 2020. Filing 13 at 5. He claims that he was hospitalized from December 5, 2020, to December 10, 2020, and that a CT scan showed that the COVID-19 infection had caused long-term bronchiectasis, lung scarring, a lung nodule, an increase in his COPD symptoms, chronic hypoxic respiratory failure, and severe emphysema. Filing 13 at 5.

After treating the plaintiff for the virus, the plaintiff's physician recommended that the plaintiff have a follow-up visit for another CT scan and a pulmonary consultation around March 2021. However, the plaintiff was not able to have this follow-up visit until three months after the recommended time. Filing 13 at 6. The plaintiff alleges the department's failure to timely schedule his follow-up appointment is the fault of the department's medical director, Harbans Deol. Filing 13 at 6. Allegedly, Deol personally reviewed the plaintiff's "individualized plan of treatment" and neglected to ensure the plan was followed. Filing 13 at 6-7.

3

## III. DISCUSSION

### 1. OFFICIAL CAPACITY CLAIMS

As a preliminary matter, the Court must dispose of the claims against the defendants in their official capacities. The plaintiff cannot bring a § 1983 suit against the Nebraska Department of Correctional Services because such a suit would be against a state, and a state is not a "person" for purposes of § 1983 liability. *See Alsbrook v. City of Maumelle*, 184 F.3d 999, 1010 (8th Cir. 1999) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989)). And a § 1983 suit cannot be asserted against department staff members in their official capacities because such a suit "is no different from a suit against the state itself." *Id*. Thus, this Court can only address the plaintiff's claims against the defendants in their individual capacities. *Id*. (citing *Hafer v. Melo*, 502 U.S. 21, 23 (1991)).

### 2. EIGHTH AMENDMENT

To establish liability under § 1983, a plaintiff must allege that each defendant was personally involved in the specific harm suffered by the plaintiff. *Faulk v. City of St. Louis,* 30 F.4th 739, 745 (8th Cir. 2022). To prevail on an Eighth Amendment claim of deliberate indifference to serious medical needs, the plaintiff must prove that, while incarcerated, he suffered from one or more objectively serious medical needs, and that each defendant actually knew of but deliberately disregarded those needs. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). Deliberate indifference is a mental state akin to criminal recklessness. *Id*. And to survive a motion to dismiss for an alleged delay in receiving medical treatment, the plaintiff must allege that the delay had some detrimental effect on him. *Jackson v. Riebold*, 815 F.3d 1114, 1119 (8th Cir. 2016).

4

The plaintiff appears to allege that the department failed to implement quarantine procedures that would have protected the plaintiff, which shows that Frakes was deliberately indifferent to the plaintiff's medical condition. That Frakes failed to promulgate appropriate quarantine procedures is not a cognizable § 1983 claim because the claim against the department's alleged inadequate policies is a claim against the State. *See Alsbrook*, 184 F.3d at 1010. And the plaintiff has not alleged sufficient facts which would show that, as an individual, Frakes acted with deliberate indifference or criminal recklessness regarding the plaintiff's medical condition in promulgating (or failing to promulgate) quarantine procedures.

The failure to *follow* department procedures *might* constitute deliberate indifference on the part of the unnamed prison staff. However, the plaintiff alleges, at most, that the prison staff was negligent or careless in implementing quarantine procedures – not criminally reckless, the requisite standard. Filing 13 at 5, 7. It is impossible for Frakes to have deliberately disregarded the plaintiff's medical needs because the plaintiff does not allege Frakes was present when the plaintiff was exposed to the COVID-19 virus. *See Faulk*, 30 F.4th at 745. And Frakes cannot be vicariously liable for the negligence of prison staff in carrying out the prison's procedures under § 1983. *See Iqbal*, 556 U.S. at 676.

The plaintiff also appears to allege that Deol was deliberately indifferent to his lung condition because Deol failed to ensure that the plaintiff saw his physician within the prescribed time, and as a result, the plaintiff's appointment was delayed by three months. Filing 13 at 6. "A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that these delays adversely

5

affected his prognosis." *Redmond v. Kosinski,* 999 F.3d 1116, 1121 (8th Cir. 2021) (quoting *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011)). The objective seriousness of the deprivation is measured by reference to the *effect* of delay in treatment. *Jackson*, 815 F.3d at 1119. Thus, to survive a motion to dismiss, the plaintiff must allege facts which could support an inference that the plaintiff was adversely impacted by the delay in medical treatment. *See id.* at 1119-20.

The plaintiff does not allege *any* facts which would show that his prognosis was worsened by the three-month delay. *See* filing 13. In his brief, the plaintiff alleges that he was "altogether denied medical treatment," filing 17 at 7, but the complaint plainly alleges that the plaintiff was able to go to his follow-up appointment, albeit after a three-month delay, filing 13 at 6. This delay, without more, is not a wholesale denial of medical treatment and cannot sustain a cause of action for a violation of the plaintiff's Eighth Amendment rights. Further, the plaintiff does not explain how or why the delay was Deol's fault. *See* filing 13 at 6-7. Thus, the plaintiff has failed to state a claim against Deol in his individual capacity.

The plaintiff asserts that discovery should continue in this case so that the plaintiff can determine who might be liable under § 1983 for alleged deliberate indifference to the plaintiff's medical needs. But the Court will not entertain a fishing expedition when the plaintiff has not sufficiently alleged any harm, and at most alleges negligence on the part of prison staff.

### 3. QUALIFIED IMMUNITY

The defendants also argue that they are entitled to qualified immunity because the plaintiff failed to show any violation of a clearly established right. The Court agrees. Qualified immunity shields public officials performing

discretionary functions from liability for conduct that does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Parker v. Chard*, 777 F.3d 977, 979 (8th Cir. 2015); *see Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012); *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). In determining whether a government official is entitled to qualified immunity, the Court asks (1) whether the facts alleged establish a violation of a constitutional or statutory right and (2) whether that right was clearly established at the time of the alleged violation, such that a reasonable official would have known that his actions were unlawful. *Johnson v. Phillips*, 664 F.3d 232, 236 (8th Cir. 2011); *see Parker*, 777 F.3d at 980.

As explained above, the facts alleged in the plaintiff's complaint do not establish a violation of a constitutional or statutory right. Therefore, the Court need not determine whether any such right was clearly established.

IT IS ORDERED:

1. The defendants' motion to dismiss (filing 14) is granted.

2. The plaintiff's claims against Diane Sabatka-Rine, Scott Frakes, and Harbans Deol are dismissed, and they are terminated as parties.

Dated this 12th day of December, 2022.

BY THE COURT:

John M. Gerrard
United States District Judge